UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

LISSETTE VEGA-RUIZ,

       Plaintiff,

  -v-                                                                  No. 17-CV-1804-LTS-SDA

MONTEFIORE MEDICAL CENTER,

       Defendant.

-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

       Lissette Vega-Ruiz ("Vega-Ruiz" or "Plaintiff") brings this action against Montefiore Medical Center ("Hospital" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 <u>et seq.</u>, Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116, the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296 <u>et seq.</u>, and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 <u>et seq.</u> The Court has jurisdiction of the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a) and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367. Defendant now moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment as to all claims. The Court has considered thoroughly all of the parties' submissions. For the following reasons, Defendant's motion is denied in its entirety.

BACKGROUND

Except as otherwise noted, the following material facts are undisputed.[1] Plaintiff was born deaf. (Pl. Add. ¶ 1.) Between March 28, 2014, and March 26, 2015, Plaintiff accompanied her elderly, "non-English-speaking" mother to the Montefiore Medical Center on four separate occasions.[2] (Def. 56.1 ¶¶ 31-42; Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl. Br."), Docket Entry No. 50, at 1.) Plaintiff alleges that she and/or her mother requested the assistance of a sign-language interpreter, either from Emergency Department staff or from treating physicians, during each of her mother's Hospital visits. (Pl. Add. ¶¶ 15, 20-21, 26-27.) Montefiore maintains a written Administrative Policy and Procedure providing that "whenever a request is made for an interpreter by a patient who is deaf or hard of hearing or companion who accompanies the patient, Montefiore shall provide an interpreter." (Defendant's Declaration in Support of Summary Judgment Dismissal ("Breitenbach Decl."), Ex. 3, Docket Entry No. 47-3, at 1.) The policy specifies circumstances under which the provision of an interpreter is mandated where "needed or requested for effective communication of patient or companion and Montefiore personnel," including "explanation of procedures tests, treatment, treatment options or surgery," and "explanation regarding follow up treatments, therapies, test results or recovery." (Id. at 2.) The Hospital had a policy granting

---

[1] The facts presented or recited as undisputed are drawn from the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1, or from evidence as to which there is no nonconclusory factual proffer. Citations to Defendant's Local Civil Rule 56.1 Statement (Defendant's Rule 56.1 Statement of Material Facts Not in Dispute ("Def. 56.1"), Docket Entry No. 48) and Plaintiff's Separate 56.1 Statement (Plaintiff's Separate Statements of Additional Material Facts ("Pl. Add."), Docket Entry No. 51-1) incorporate by reference the parties' citations to the underlying evidentiary submissions.

[2] Plaintiff visited the Hospital with her mother on March 18, 2014, July 28 to 29, 2014, March 3, 2015, and March 26, 2015. (Pl. Add. ¶¶ 14-27.) The Hospital is located in the Bronx. (Amended Complaint, Docket Entry No. 9, at ¶ 6.)

every staff member "the authority to get an interpreter for the patient or companion without any separate administrative consent." (Pl. Add. ¶ 33.) Nonetheless, the Hospital failed to provide Plaintiff with an interpreter. (Pl. Add. ¶¶ 15, 20-21, 26-27.) The Hospital has no record of Plaintiff's requests for a sign-language interpreter and, on that basis, disputes Plaintiff's allegations that interpretive services were requested and not provided. (Defendant's Response to Plaintiff's Separate Statements of Additional Material Facts ("Def. Resp."), Docket No. 56, ¶ 15.)

Plaintiff alleges that the Hospital's Assistant Director of Customer Service, Maria Trotta-Williams, informed Plaintiff that she would not be provided with an interpreter because she was "not the patient." (Lissette Vega-Ruiz's Deposition ("Vega-Ruiz Dep."), Docket Entry No. 47-7, at 41:13-43: 10.) Plaintiff further alleges that certain Hospital staff members asked her if she could "just lip read" and just "figure this out." (Id. at 35:21-22.) A Hospital social worker also allegedly refused Plaintiff's mother's request for an interpreter for her daughter by stating: "no, you don't need one." (Pl. Add. ¶ 27.) The social worker alleges, however, that Plaintiff's mother requested that Plaintiff be excluded from the session. (Def. Resp. ¶ 27.)

Plaintiff assumes primary responsibility for her mother's healthcare while her mother, who spends part of each year in Puerto Rico, resides in New York. The two live together in the Bronx for at least half of the year. (Pl. Add. ¶ 10.) Plaintiff serves as the designated point of contact between her mother and her mother's doctors at the Hospital, and has escorted her mother to every Hospital visit. (Plaintiff's Response to Defendant's Rule 56.1 Statement ("Pl. Resp."), Docket No. 51, ¶ 30; Pl. Add. ¶¶ 11-12.) Plaintiff's mother requested interpretive services for her daughter because she believed her daughter "want[ed]" and "needed" to know what was going on with her condition. (Pl. Add. ¶¶ 16, 20.) Plaintiff

continues to care for her mother, who experiences chronic and recurring medical complications. Since filing her Complaint in this case, Plaintiff has accompanied her mother to the Hospital on six separate occasions. (Id. ¶ 44.) For these reasons, Plaintiff asserts that there is a "concrete likelihood" that Defendant will deny her interpretive services during a future Hospital visit. (Pl. Br. at 17.)

Plaintiff testified that she suffered emotional distress as a result of being denied a sign-language interpreter at the Hospital. After the March 18, 2014, visit, Plaintiff's mother noticed that Plaintiff was "sad," "depressed," and "crying." (Pl. Add. ¶ 41.) After the second visits on July 28 and 29, 2014, Plaintiff testified that she felt "ignored," "insulted," "invisible," "angry" and "upset." (Id. ¶ 23.) Plaintiff's mother testified that her daughter was "upset," "depressed" and "crying" after one of the incidents. (Id. ¶ 42.) After the incidents, Plaintiff testified, Plaintiff "stayed in a bad mood at home." (Id. ¶ 43.)

DISCUSSION

Rule 56 Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is to be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party bears the burden of demonstrating the absence of a material fact, and the court must be able to find that, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011).

Discrimination Claims

        Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C.S. § 12182(a) (LexisNexis 2009). The ADA defines a "public accommodation" as a private entity affecting commerce, including, <u>inter alia</u>, hospitals. 42 U.S.C.S. § 12181(7)(F) (LexisNexis 2009). The ADA defines "discrimination" to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C.S. § 12182(b)(2)(A)(iii) (LexisNexis 2009). Similarly, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C.S. § 794(a) (LexisNexis 2018). Because Title III of the ADA and Section 504 provide similar protections for individuals with disabilities, the elements a claimant must establish to prevail on an action under either statute are the same. <u>Powell v. Nat'l Bd. of Med. Exam'rs</u>, 364 F.3d 79, 85 (2d Cir. 2004). Indeed, neither party has identified any difference between the ADA and the RA that is relevant to this motion practice.

        "In order to establish a prima facie violation under these acts, [plaintiff] must show that 1) he is a qualified individual with a disability; 2) [defendant] is an entity subject to the

acts; and 3) he was denied the opportunity to participate in or benefit from [defendant's] services, programs, or activities or [defendant] otherwise discriminated against him by reason of his disability." Wright v. New York State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016).[3] Defendant does not dispute that Plaintiff is deaf or that the Hospital is subject to the ADA and the RA. (Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Br."), Docket Entry No. 49, at 5 n.3.) Defendant also acknowledges that its policy requires the provision of interpretive services for patients' companions where necessary for effective communication. (See Def. 56.1 ¶¶ 2-4.) Defendant argues, however, that because Plaintiff's mother was capable of communicating on her own in Spanish with the Hospital personnel, and in turn with Plaintiff, and had not designated Plaintiff as her health care proxy or decision maker, the Hospital had no obligation to provide Plaintiff with sign-language interpretive services and Plaintiff "was simply a visitor at Montefiore with a close tie to an adult, competent patient" rather than a companion with whom its personnel had an obligation to communicate effectively. (Def. Br. at 6-8.) Defendant also disputes, based on the absence of notations of requests in its records, that Plaintiff and her mother requested interpretive services. Taking Plaintiff's disputed allegations as true, as the Court must on summary judgment motion practice, and drawing all reasonable inferences in her favor, Defendant's position as to the existence of a duty to provide interpretation to communicate effectively with Plaintiff in the

---

[3]  Plaintiff also brings a claim under Section 1557 of the ACA, but, because Section 1557 explicitly incorporates Section 504 of the Rehabilitation Act, the Court need not conduct an independent analysis of Plaintiff's ACA claim. See Southeast Pennsylvania Transp. Auth. v. Gilead Scis., Inc., 102 F. Supp. 3d 688, 698-99 (E.D. Pa. 2015) (finding that Section 1557 imports the RA's standards and burden of proof into a Section 1557 claim); see also Weinreb v. Xerox Business Services, LLC Health and Welfare Plan, 323 F.Supp.3d 501, 520-21 (S.D.N.Y. 2018) (same).

context of the Hospital encounters is facially inconsistent with the regulations promulgated pursuant to the ADA and the RA.[4]

The ADA regulation concerning "auxiliary aids and services" provides that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). This requirement "includes an obligation to provide effective communication to companions who are individuals with disabilities." Id. The regulation does not limit the definition of "companion" to "health care proxy," "guardian," or "health care decision maker," as Defendant argues (Def. Br. at 6); rather, the regulation defines "companion" to include "a family member, friend, or associate of an individual seeking access to, or participating in, the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation, who, along with such individual, is an appropriate person with whom the public accommodation should communicate." 28 C.F.R. § 36.303(c)(1)(i).[5] While the regulation does not define "appropriate person," Plaintiff's factual proffers, construed in the light most favorable to her, indicate that Plaintiff was indeed an "appropriate person" with whom the Hospital should have communicated. The regulation includes a requirement that the Hospital provide effective communication to "a family member" accompanying a patient, without any qualification as to

---

[4]  The relevant ADA-implementing regulations were promulgated by the Department of Justice. See 42 U.S.C.S. § 12186(b) (LexisNexis 2009); see also 28 C.F.R. § 36.101. The relevant RA-implementing regulations were promulgated by the Department of Health and Human Services ("DHS") "to effectuate section 504 of the Rehabilitation Act." 45 C.F.R. § 84.1; see also 29 U.S.C.S. 794(a) (LexisNexis 2018) (granting the DHS authority to promulgate rules).

[5]  The RA-implementing regulation provides that, "[i]n providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap . . . [p]rovide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons." 45 C.F.R. § 84.52(a)(4). Defendant does not address this regulation independently in its brief.

the relationship of such family member. Notably, Defendant's representative testified as to the importance of communicating with a patient's family members about the patient's medical condition and instructions for future care. (Pl. Add. ¶ 37.) Plaintiff and her mother enjoyed a close familial relationship and Plaintiff was deeply involved in her mother's care. Plaintiff's mother demonstrated that she believed her daughter was an "appropriate person" with whom the Hospital should have communicated by requesting interpretive services for her daughter on several occasions. Further, because the Hospital has not alleged that its employees would have refused to communicate with Plaintiff if she were hearing-capable, Plaintiff could have accessed information regarding her mother's healthcare if she lacked a disability. Cf. Bravin v. Mount Sinai Med. Ctr., 58 F. Supp. 2d 269, 272 (S.D.N.Y. 1999) (finding deaf plaintiff entitled to reasonable accommodation under the ADA and RA to participate in his wife's Lamaze classes through interpretive services because "the course, as a benefit or service, was open to a person without a disability," and, therefore, defendant hospital could not "deny access to that benefit or service to a person with a disability"). As a close family member of a patient seeking access to the Hospital's services who played a role in her mother's care and requested interpretive services to facilitate communication concerning such care, Plaintiff has at a minimum framed a genuine issue of material fact as to whether she was a "companion" within the meaning of the regulation.

  Defendant relies principally on Durand v. Fairview Health Services to support its argument that Plaintiff was not entitled to auxiliary aids under the ADA or the RA. 902 F.3d 836 (8th Cir. 2018). Durand considered whether the defendant hospital had violated the ADA and RA by failing to provide sign-language interpreters to hearing-impaired plaintiffs during portions of their son's hospitalization. Id. at 839. The Durand court granted summary judgment in defendant's favor, finding that there was no factual dispute that the hospital had provided

services to the same extent as it would have done in non-emergency circumstances to similarly-situated family members, and thus there was no dispute as to whether the defendant hospital had provided a legally sufficient amount of interpretive services. Id. at 843. There are at least two material factual distinctions between Durand and this case: (i) the patient in Durand had specifically elected not to designate his parents as parties authorized to receive his medical information, instead designating another relative with whom the hospital did communicate at all relevant times, and (ii) the Durand plaintiffs actually received some interpretive services during their son's hospitalization. Id. at 842-43. Here, unlike the plaintiffs in Durand, Plaintiff proffers that (i) Plaintiff's mother wanted her daughter to be involved in her medical care, including by receiving information about her treatment, and (ii) Plaintiff did not receive interpretive services at any point during her mother's hospitalization. Durand thus provides no basis for a determination that, at this juncture, Defendant is entitled to judgment as a matter of law.

Furthermore, because the NYSHRL is construed "coextensive[ly] with [its] federal counterparts," and because the NYCHRL should be construed "more liberally" than its federal counterparts, Defendant also fails to demonstrate that it is entitled to summary judgment on Plaintiff's state- and city-law claims. Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 277-78 (2d Cir. 2009).

The Court now turns to the parties' arguments regarding the viability of Plaintiff's claims for monetary, declarative, and injunctive relief.

Damages[6]

    *Damages Under the RA*

To recover compensatory damages under the RA, Plaintiff must show that the Hospital exhibited "deliberate indifference to the strong likelihood of a violation." Loeffler, 582 F.3d at 275 (internal citations omitted). The Second Circuit has found that a hospital is deliberately indifferent if hospital employees with the "authority to correct the discrimination" had "actual knowledge" of discrimination against the plaintiff and "failed to respond adequately." Id. at 276 (vacating district court finding that "no reasonable jury could find that the Hospital acted with deliberate indifference" in light of plaintiffs' factual proffers that (i) plaintiffs (the patient's children) had made many unheeded attempts to secure an interpreter, and (ii) the patient's operating physician "laughed off" one plaintiff's request for an interpreter).

Here, while the Hospital had a policy to provide auxiliary aids to "companion[s] who accompan[y] the patient," the parties dispute whether such policy was followed in Plaintiff's case. Plaintiff alleges that, during each Hospital visit, Plaintiff and her mother requested a sign-language interpreter from Hospital staff members who, according to the Hospital's policy, had the authority to provide Plaintiff with interpretive services. According to Plaintiff, each staff member either ignored or dismissed her requests. For instance, Plaintiff testified that a staff member at the Hospital asked Plaintiff if she could "just lip read," and whether she could just "figure this out." (Vega-Ruiz Dep. at 35:12-22.) The Assistant Director of Customer Service informed Plaintiff that because she was "not the patient," she would not be provided with an interpreter. (Vega-Ruiz Dep. 41:13-25, 43:1-16). On one occasion, a Hospital

---

[6]     Monetary damages are not recoverable in private actions under Title III of the ADA. See, e.g., Powell, 364 F.3d at 86.

social worker refused Plaintiff's mother's request for an interpreter for her daughter by stating: "no, you don't need one." (Pl. Add. ¶ 27.)  Indeed, Defendant still maintains that Plaintiff is not entitled to an interpreter.  (See Def. Br. at 4-8.)  Viewing all the evidence in the light most favorable to Plaintiff, the Court concludes that a reasonable jury could find that the Hospital was deliberately indifferent to the alleged discrimination against Plaintiff.  Thus, the Court cannot conclude that, as a matter of law, Plaintiff is not entitled to compensatory damages under the RA.

*Damages Under the NYSHRL and NYCHRL*

In order to recover compensatory damages under the NYSHRL and the NYCHRL, Plaintiff must demonstrate that she suffered "humiliation" or "mental anguish" as a result of the alleged discrimination.  Cullen v. Nassau Cty. Civil Serv. Comm'n, 53 N.Y.2d 492, 496-97 (N.Y. 1981).  No showing of intentional discrimination is required.  Id. at 496.  Evidence of Plaintiff's emotional distress "may be established through the testimony of the complainant alone," id. at 497, and relief "is not preconditioned on whether [the plaintiff] underwent treatment, psychiatric or otherwise," MacMillan v. Millennium Broadway Hotel, 873 F. Supp. 2d 546, 560 (S.D.N.Y. 2012) (internal citations omitted).

Defendant argues that Plaintiff's testimony is conclusory and insufficient to support a finding of emotional distress.  However, in addition to Plaintiff's testimony that she "stay[ed] in a bad mood at home" and felt "ignored," "insulted," "invisible," "angry," and "upset" because she was denied an interpreter at the Hospital, Plaintiff's mother also testified that, following her Hospital visits, her daughter was "very sad and depressed."  Viewing Plaintiff's corroborated evidence of emotional distress in the light most favorable to her, the Court is "not persuaded that it is proper to deny damages as a matter of law at this point in the proceedings and will allow Plaintiff[] an opportunity to present evidence substantiating [her]

emotional distress at trial." Dejesus v. Vill. of Pelham Manor, 282 F. Supp. 2d 162, 178 (S.D.N.Y. 2003).

Declaratory and Injunctive Relief

To establish standing to seek injunctive relief, Plaintiff must present evidence of a "real or immediate" threat, not a "conjectural" or "hypothetical" threat that she will be wronged again by Defendant. City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983). Specifically, Plaintiff must proffer factual evidence that (i) she will use Defendant's services in the future, and (ii) during those visits, Plaintiff will suffer the same discriminatory deprivation of services. See Loeffler v. Staten Island Univ. Hosp., 2007 WL 805802, at *9-10 (S.D.N.Y. Feb. 27, 2007), rev'd on other grounds, 582 F.3d 268 (2d Cir. 2009). Here, Plaintiff proffers that (i) her mother suffers from chronic health issues that will likely require future hospital visits, (ii) Plaintiff reasonably expects to accompany her mother to the Hospital, as she has accompanied her mother during all past visits, and (iii) Plaintiff's mother continues to seek services at the Hospital regularly: since Plaintiff filed her Complaint, her mother has visited the Hospital on six separate occasions. (Pl. Add. ¶¶ 9; 11, 44.) Further, Plaintiff and her mother live in the Bronx, in close proximity to the Hospital. (Pl. Add. ¶ 10.) Defendant has not proffered any evidence as to steps taken to prevent the occurrence of the type of discrimination Plaintiff allegedly faced during her past Hospital visits. Therefore, the Court cannot conclude that injunctive and declaratory relief are unavailable to the Plaintiff as a matter of law. She has made sufficient factual proffers to support the requisite inference that, because of her physical proximity to the Hospital, combined with her mother's chronic medical needs and Plaintiff's continuing role in helping to address those needs, Plaintiff will be injured again upon visiting the Hospital at a future time.

CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for summary judgment in its entirety. This Memorandum Order resolves Docket Entry No. 46. Defendant is directed to file under seal Exhibits 9, 10, and 11 to Docket Entry No. 47, as requested in its June 12, 2019, letter (docket entry no. 62).

The final pretrial conference in this action is currently scheduled to be held on September 27, 2019, at 10:00 a.m. The parties must confer and make submissions in advance of the conference as provided in the pretrial scheduling orders filed at Docket Entry Nos. 41 and 61. The parties must promptly contact Magistrate Judge Aaron's chambers to schedule a settlement conference.

SO ORDERED.

Dated: New York, New York
July 15, 2019

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge