USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/26/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Lizzette Vega-Ruiz,

                              Plaintiff,

-against-

Montefiore Medical Center,

                              Defendant.

1:17-cv-01804 (SDA)

OPINION AND ORDER

**STEWART D. AARON, United States Magistrate Judge:**

Pending before the Court is a motion by Plaintiff Lizzette Vega-Ruiz ("Plaintiff"), pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, for judgment as a matter of law, and, pursuant to Rules 50(c)(1) and 59(a)(1)(A), for a conditional grant of a new trial. (Not. Motion, ECF No. 95.)[1] For the following reasons, Plaintiff's motion is DENIED in its entirety.

## BACKGROUND

This action alleged violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*; Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101, *et seq.* (Am. Compl., ECF No. 9, ¶¶ 31-82.) In support of these claims, Vega-Ruiz, who was born deaf

---

[1] In deciding this motion, the Court has considered Plaintiff's Memorandum of Law (Pl.'s Mem., ECF No. 110); the Declaration of Andrew Rozyinski (Rozyinski Decl., ECF No. 95-2) and its accompanying exhibits (which are filed under both ECF No. 95 & 110); Defendant's Memorandum of Law in opposition (Def.'s Mem., ECF No. 107-3); the Declaration of Roy Breitenbach and its accompanying exhibits (Breitenbach Decl., ECF No. 107); and Plaintiff's Reply Memorandum. (Pl.'s Reply, ECF No. 108.)

and communicates through American Sign Language ("ASL"), alleged that she accompanied her mother to Montefiore Medical Center ("Montefiore") on four occasions between March 2014 and March 2015 and did not receive an ASL interpreter despite requesting one. (*See id*. at ¶¶ 13-21, 49, 59, 69, 80; Pl.'s Mem. at 2.)

## **PROCEDURAL HISTORY**

This action was filed on March 10, 2017. (*See* Compl., ECF No. 1.) Plaintiff filed an Amended Complaint on May 10, 2017. (*See* Am. Compl.) After the completion of discovery, Montefiore moved for summary judgment on January 25, 2019 (MSJ, ECF No. 46) and summary judgment was denied in its entirety by District Judge Swain on July 15, 2019. *Vega-Ruiz v. Montefiore Med. Ctr.*, No. 17-CV-01804, 2019 WL 3080906, at *6 (S.D.N.Y. July 15, 2019). On September 6, 2019, the parties consented to the undersigned to preside over this case for all purposes. (Consent, ECF No. 72.)

Trial commenced on November 18, 2019 and lasted three days.[2] Plaintiff's case in chief relied principally upon testimony by Blanca Ruiz, Plaintiff's mother, who appeared by video deposition testimony, and Plaintiff herself; both testified that each repeatedly asked Montefiore employees to provide an ASL interpreter for Plaintiff during emergency room visits on each of March 18, 2014, July 28, 2014 and March 3, 2015, but none was provided. (Breitenbach Decl. Ex. B ("B. Ruiz Tr."), ECF 107-2, at 11-12, 14-16; Trial Tr. at 41, 66, 177, 194-198, 206, 214.)[3] However, neither Plaintiff nor Blanca Ruiz could recall who they asked, or any

---

[2] Transcripts from the three days of trial were filed at ECF Nos. 99, 101 and 103. Citations to pages of the trial transcript shall be in the form "Trial Tr. at X" with the "X" reflecting the page number of the transcript that is being cited.

[3] Plaintiff and Blanca Ruiz also testified about Blanca Ruiz's March 26, 2015 visit with a Montefiore social worker. (Trial Tr. at 193; B. Ruiz Tr. at 9-12.)

2

details about what the hospital employees looked like. (B. Ruiz Tr. at 13, 14, 23, 25, 28; Trial Tr. at 210 (regarding March 2014 visit, "Q. OK. Could you describe the person who your mother asked for an interpreter? [Plaintiff]. I don't recall."), 214 (regarding July 2014 visit, "Q. Can you describe the person you asked for an interpreter? [Plaintiff]. I don't remember. It was either a woman or a man."), 215, 216 (regarding March 2015 visit, "Q. OK. And can you describe that front-desk person [you asked for an interpreter]? [Plaintiff]. I don't recall.").) In addition, Blanca Ruiz testified that she recently had suffered a stroke and remembers very little. (B. Ruiz Tr. at 14 ("THE WITNESS: I barely remember because I suffered a stroke and there are many things that I cannot remember."), 20.)

Plaintiff also elicited testimony from current and former hospital employees about hospital policy requiring employees to provide "appropriate auxiliary aids and services" to "a patient, relative, or companion of a patient [who] is deaf or hard of hearing." (Trial Tr. at 56-57, 69, 71-72, 166-67.) The hospital witnesses testified that any requests for, or unprompted offers to provide, interpretation must be documented in the medical record. (*Id*. at 58, 59, 72, 84, 96, 136, 232-33, 235, 237.) Hospital employees also explained that they require patient permission, under the Health Insurance Portability and Accountability Act, before providing an interpreter for patient family members or companions. (*Id*. at 56, 59, 60, 72, 88-89, 103-04, 135-36, 158, 167-69, 237.) Each incoming hospital employee is oriented to these policies and procedures, and all Montefiore employees are tested annually as to them. (*See id*. at 73, 101, 153, 158, 161, 250, 253-54.)

The evidence submitted at trial showed that, while there is a reference to "family at bedside" in Blanca Ruiz's July 28, 2014 medical record (Rozyinski Decl. Ex. 3 ("7/28/14 Med.

3

Rec."), ECF 110-1, at 4; Trial Tr. at 63-64, 96-97, 106, 162, 186, 262-64, 270-71, 309-11, 314, 341-42, 344-45), there were no Montefiore records to indicate that Plaintiff or her mother requested an ASL interpreter during that visit or any of the emergency department visits. (Trial Tr. at 64, 77, 81, 82, 84, 102, 104.) However, the record reflects that Blanca Ruiz received a Spanish interpreter. (*See* Trial Tr. at 195-96; B. Ruiz Tr. at 22-25.)

On November 19, 2019, immediately after Plaintiff rested her case, her counsel made an oral application for judgment as a matter of law pursuant to Rule 50(a)(1) arguing:

> [T]he evidence has shown that Ms. Vega-Ruiz did not receive any auxiliary aids or services while at Montefiore and developed [ ] law under the . . . New York City Human Rights Law, would ensure that family members and companions have a right to effective communication and appropriate auxiliary aids and services. Defendant has not provided any evidence that it provided any auxiliary aids or services to Ms. Vega-Ruiz for her visits to the hospital with her mother. They have also not shown that it would be an undue burden or that it would be a fundamental alteration to provide those services to Ms. Vega-Ruiz. Ms. Vega-Ruiz, it's already been testified that she would be entitled to communicate with staff for medical and nonmedical information. They have shown no evidence from any of their staff that has a specific recollection of Ms. Vega-Ruiz being there for the three hospital visits. Therefore, defendant cannot make any defense in terms of claiming that they provided any effective auxiliary aids or services, and for those reasons, we would move for a directed verdict in this case.
>
> [. . . .] Under New York City Administrative Code Section 8-107(15) the [NYCHRL] requires a covered entity, such as defendant, to provide reasonable accommodations. Under New York City Administrative Code 8-102, reasonable accommodation is defined as any accommodation that does not impose an undue hardship. [ ] we've heard sworn testimony and received document[ary] evidence that it would not impose an undue hardship to provide sign language interpretation services specifically for the three emergency department visits on March 18, 2014, July 28, 2014, and March 3, 2015.
>
> We've heard sworn testimony from both plaintiff and her mother that they requested sign language interpretation services. So for those reasons, any accommodation requested would be reasonable, and we have sworn testimony that accommodations were requested and not provided.

4

(Trial Tr. at 238-39, 243.) Defendant opposed Plaintiff's application, arguing:

> Plaintiffs have the burden for a preponderance of the evidence on these claims. We have no burden. I think that there is a reasonable juror could find that plaintiff has not established that plaintiff was even there at the hospital. That's a disputed question of fact right now. Plaintiff has testified that she was there, but there is nothing in the medical record, notwithstanding [in] any of the testimony, all of the testimony about things being recorded, there is absolutely nothing in the medical record to indicate that she was there. Plaintiff contends that she requested interpreting services. There's nothing in the medical record indicating that she did. Plaintiff contends that she should have been provided with them as a companion, and there's no indication anywhere that the mom ever designated or gave consent.

(*Id*. at 240.) The Court denied Plaintiff's motion, finding several issues of fact, including "whether plaintiff was even present at one or more of these visits with her mother" and "what services were requested if any." (*Id*. at 243.)

The jury returned a verdict in favor of Defendant on November 20, 2019. (Special Verdict Form, ECF No. 94, at 2-4.) Thereafter, on November 21, 2019, the Clerk of the Court issued a judgment in favor of Defendant and dismissed the Complaint. (Judgment, ECF No. 94, at 1.)

Plaintiff timely filed the instant Motion on December 19, 2019, Defendant opposed on January 29, 2020 and Plaintiff filed her reply on February 19, 2020.

## LEGAL STANDARDS

### I. Judgment As A Matter Of Law Under Rule 50

Rule 50 allows a Court to grant a party's "renewed motion for judgment as a matter of law" after a verdict, if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1), (b), (c)(1). When considering a Rule 50 motion, "the district court is required to consider the evidence in the light

5

most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in [its] favor from the evidence." *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 367 (2d Cir. 1988). "The standard for post-verdict judgment as a matter of law is the same as that for summary judgment under Rule 56. Thus, 'a district court must deny a motion for judgment as a matter of law unless . . . there can be but one conclusion as to the verdict that reasonable persons could have reached.'" *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 287 F. Supp. 3d 163, 167 (N.D.N.Y. 2018) (quoting *Nadel v. Isaksson*, 321 F.3d 266, 272 (2d Cir. 2003)). The movant, therefore, faces "a high bar." *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 479 (2d Cir. 2001).

Moreover, when considering the Motion, "[t]he court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Smith*, 861 F.2d at 367 (internal quotations and citations omitted). Instead, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000).

II. **New Trial Under Rules 50(c)(1) and 59(a)(1)(A)**

Under Rule 50, if the Court grants judgment as a matter of law, it must also "conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. P. 50(c)(1). For its part, Rule 59 provides that a district court "may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The standard under Rule 59 is less stringent than under Rule 50 in two respects:

(1) a new trial under Rule 59(a) "may be granted even if there is substantial evidence supporting the jury's verdict," and (2) "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner."

*Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133-34 (2d Cir. 1998)).

However, to order a new trial, the Court must find that the jury verdict was "seriously erroneous" or "a miscarriage of justice." *Manley*, 337 F.3d at 245 (internal citations omitted). And "[w]hen considering a motion for a new trial under Rule 59(a) on the ground that the jury's verdict is against the weight of the evidence, our cases 'teach [that a] high degree of deference [is] accorded to the jury's evaluation of witness credibility, and that jury verdicts should be disturbed with great infrequency.'" *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97-98 (2d Cir. 2014) (quoting *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012)).

**DISCUSSION**

I.  **Plaintiff Is Not Entitled To Judgment As A Matter Of Law**

Plaintiff moves for judgment as a matter of law under NYCHRL[4] specifically as to the three emergency room visits.[5] (Pl.'s Mem. at 1, 2.) Plaintiff argues that the jury did not have "legally sufficient basis to find" for Defendant because "the jury heard sworn, uncontroverted

---

[4] At trial, in addition to the NYCHRL, Plaintiff argued that Defendant was liable under the ADA, RA, ACA and the NYSHRL. (Trial Tr. at 363.) However, Plaintiff's instant motion is limited to her claim under the NYCHRL.

[5] At trial, Plaintiff had argued that Defendant unlawfully failed to provide her with accommodations for three emergency room visits and one visit Plaintiff's mother made to a social worker within Montefiore. (Trial Tr. at 34 ("In this case, when you look, and the evidence will show, at the four visits -- three emergency room visits, one social work visit -- there were countless of interactions with Montefiore staff.").) However, Plaintiff's instant motion is limited to the three emergency department visits.

testimony that Plaintiff and her mother, Blanca Ruiz, made requests for sign-language interpreters at the emergency department but were ignored" and that Montefiore violated its legal duty to provide reasonable accommodations under NYCHRL. (Pl.'s Mem. at 2, 3, 5, 10-11.)

Defendant counters that there was more than sufficient evidence for a reasonable jury to reach a defense verdict here. (Def.'s Mem. at 8.) Montefiore argues that the jury properly credited the evidence of hospital policy over testimony by Plaintiff and her mother (*id*. at 10) and the jury properly determined that Montefiore was not duty bound to accommodate Plaintiff where there remained a question whether "Plaintiff was physically present in the emergency department with her mother." (*Id*. at 11.)

The Court finds that Plaintiff is not entitled to judgment as a matter of law. The jury determined that Plaintiff had not "proved, by a preponderance of the evidence, that Defendant treated her less well, or denied her a reasonable accommodation at least in part because of her disability, in violation of the New York City Human Rights Law." (Special Verdict Form at 1.) Plaintiff now seeks to challenge that determination on the purported basis that she offered "uncontroverted" testimony and that Defendant's evidence was too speculative to have been relied upon by the jury. (*See* Pl.'s Mem. 6-9.) Plaintiff takes issue with the crux of Defendant's argument, as summarized on summation:

> [T]here is still a nagging fundamental question about this case, about plaintiff's allegations . . . taking Ms. Vega-Ruiz's allegations at face value, the question still remains: How come three times Ms. Ruiz went to the hospital, Blanca Ruiz went to the emergency department, three different emergency departments in the Montefiore system, . . . . How come there was no reference in the medical records, not even once, for the provision of interpreting services for Ms. Ruiz, anybody requesting interpreting services, any discussion of Ms. Vega-Ruiz, any discussion about the request for interpreting services, any reference to Ms. Ruiz's asking for interpreting services with her daughter? There is nothing.

(Trial Tr. at 318-20.) Plaintiff asserts that Defendant's position is speculative because it "relies on the absence of facts." (Pl.'s Reply at 4.)

It is well settled that "[t]he jury's role as the finder of fact does not entitle it to return a verdict based only on confusion, speculation or prejudice; its verdict must be reasonably based on evidence presented at trial." *Michelman v. Clark-Schwebel Fiber Glass Corp.*, 534 F.2d 1036, 1042 (2d Cir. 1976). However, the jury here heard testimony about Montefiore's policy that employees must document all interpretation requests. (Trial Tr. at 58, 59, 72, 84, 96, 136, 232-33, 235, 237.) Thus, it was not speculative for the jury to rely on the absence of any medical records that such requests in fact were made. Defendant properly presented the evidence of this omission to the jury to argue that Plaintiff failed to meet her burden under the preponderance of the evidence.[6] *See Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 190 F. Supp. 2d 430, 443 (E.D.N.Y. 2002), *aff'd*, 370 F.3d 314 (2d Cir. 2004) (finding that, even where defense counsel engaged in improper speculation on summation, "defendants were free to argue that Plaintiff had not met her burden and to question the sufficiency of her evidence").

Even if Defendant's argument was speculative, the Court explicitly instructed the jury not to speculate or rely upon speculation. (Trial Tr. at 357, 372.) Moreover, since the record

---

[6] As to the Plaintiff's burden, the Court charged the jury as follows:

> If you find that the credible evidence on a given issue is evenly divided between the parties -- that it is equally probable that one side is right as it is that the other side is right -- then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence -- the party must prove the element at issue by a preponderance of the evidence. . . . Now plaintiff bears the burden of proving every essential element of her claim by a preponderance of the evidence. If you find that the plaintiff has failed to establish a claim by a preponderance of the evidence, you must decide against her on that claim.

(Trial Tr. at 354-55.)

does not reflect that the jury relied upon any alleged speculation, there is no basis to overturn the verdict. *See Tesser*, 190 F. Supp. 2d at 443 ("I find that any potential prejudice resulting from statements by defense counsel which may have verged on speculation was adequately cured by the instructions to the jury, and in any case, in light of all the other evidence, such statements could not be considered so substantially prejudicial as to 'in some material respect' have 'swayed' the factfinder's judgment." (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir. 1997)).

Based upon the verdict, it appears that the jury made an adverse credibility determination against Plaintiff's testimony and that of her mother. *Robinson v. Cattaraugus Cty.*, 147 F.3d 153, 160 (2d Cir. 1998) ("[A] jury is entitled to believe some parts, and to disbelieve other parts, of the testimony of any given witness."); *King v. Verdone*, No. 97-CV-01487, 1999 WL 33432177, at *1 (D. Conn. Sept. 30, 1999) ("That the jury chose to believe [one party] in the face of the contradicting testimony of the [other] is not grounds for judgment as a matter of law."). As such, the Court cannot second guess the jury's verdict, and it will not be overturned. *See Lore v. City of Syracuse*, 670 F.3d 127, 149-50 (2d Cir. 2012) (A jury's "assessments of witness credibility and its choices between competing factual inferences are not to be second-guessed"); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

Plaintiff places significance on the "family at bedside" notations in the July 28, 2014 medical records to support the fact that Plaintiff was at her mother's bedside that day. (*See* Pl.'s Mem. at 6-7.) However, there is nothing in the record to indicate who may have been present,

whether the family member was even awake (since the July 28, 2014 visit lasted from 11:11 p.m. until 5:15 a.m. on July 29, 2014), or any other information about what conclusions could have or should have been drawn by the hospital employee who made that notation. (*See* 7/28/14 Med. Rec.) Importantly, there is no mention in the record of the family member who was at the bedside requesting an ASL interpreter. (*See id*.) The jury properly weighed all the evidence before it, including the medical records from July 28, 2014, and ruled in favor of the Defendant. There is no basis in the record to overturn the jury's verdict.

For these reasons, Plaintiff's motion for judgment as a matter of law is denied.

II.     **Plaintiff Is Not Entitled To A New Trial**

Plaintiff argues that she is entitled to a new trial because the jury's verdict was "seriously erroneous" and "a miscarriage of justice." (Pl.'s Mem. at 13-24.) Plaintiff relies upon the same arguments raised seeking judgment as a matter of law (*id*. at 14), and adds that the verdict was a "miscarriage of justice" because Defendant's argument that Plaintiff may not have been present at the hospital was raised at the "tail end of trial" and was not included the joint Pre-Trial Order. (*See* Pl.'s Mem. at 15-16.)

The Court finds that the jury's verdict was neither seriously erroneous nor a miscarriage of justice. For the same reasons as those stated above, the jury made credibility determinations that should not be disturbed. "To be sure, Rule 59(a)(1)(A) affords trial courts latitude in reviewing jury verdicts and in considering credibility when doing so. But where, as here, a verdict is predicated almost entirely on the jury's assessments of credibility, such a verdict generally should not be disturbed except in an egregious case, to correct a seriously erroneous

result, or to prevent a miscarriage of justice." *Raedle*, 670 F.3d at 418-19; *see also DLC Mgmt.*, 163 F.3d at 134 (same). On the record before the Court, there is no reason to grant a new trial.

Plaintiff asserts that the verdict is a miscarriage of justice because Defendant made an argument to the jury that was not included in the joint Pre-Trial Order. (Pl.'s Mem. 15-16.) Plaintiff posits that "at the tail end of trial, the Hospital changed course on its liability theory, contending that Plaintiff may not have been present at the Hospital. . . . The Hospital never raised this issue in the Pre-Trial Order, let alone during the litigation, and 'a party's failure to include a legal theory or defense in the pre-trial order results in its subsequent abandonment or waiver.'" (Pl.'s Mem. at 15-16 (quoting *Colli v. Wirth*, No. 94-CV-03234, 1996 WL 442835, at *1 (S.D.N.Y. Aug. 6, 1996)[7]).) However, Plaintiff's position is based upon an erroneous premise, since Defendant included in the joint Pre-Trial Order its factual argument regarding whether or not Plaintiff was present in the hospital.

Under Section VI.C, Defendant's Defenses, Defendant states: "Plaintiff drove her mother three times to the Hospital's Emergency Department. **There is no record of Plaintiff accompanying her mother throughout her treatment at the Emergency Department**, nor is there any record that Plaintiff or her mother made a request for interpreting services for Plaintiff." (JPTO, ECF No. 86, at 10 (emphasis supplied).) In addition, Defendant raised this argument very early at trial, and not just at the "tail end of trial," as Plaintiff asserts. (*See* Pl.'s Mem. at 15.) In his opening statement, defense counsel stated "there's not one record that Ms.

---

[7] In *Colli v. Wirth*, the Court declined to consider "the effect of [a defendant's] discharge in bankruptcy" on his liability under a partnership agreement because the legal argument had not been raised prior to trial. *Colli*, 1996 WL 442835 at *1. In reaching this conclusion, the *Colli* court cited to cases and "stress[ed] that this rule applies solely to legal theories or defenses." *Id*. (citing *Lutnick v. New York City Health & Hosps. Corp.*, No. 89-CV-04217, 1994 WL 704804, at *2 (S.D.N.Y. Dec. 16, 1994)). Here, by contrast, Defendant's argument being challenged by Plaintiff is a factual one, not a legal one.

Vega-Ruiz was ever there." (Trial Tr. at 40.) In any event, Plaintiff cannot contend that she was caught unawares by Defendant's argument regarding her presence at the hospital, because her counsel anticipated it, stating during his opening statement: "this is what the hospital, we anticipate, will argue. . . . that she was never there the whole time, that's why we didn't provide an interpreter. . . . That's their, what we anticipate, their defense is going to be[,] that she was never there." (Trial Tr. at 29.)[8]

For these reasons, Plaintiff's motion for a new trial is denied.

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion (ECF No. 95) is DENIED in its entirety.

Dated: New York, New York
       March 26, 2020

SO ORDERED.

_____
STEWART D. AARON
United States Magistrate Judge

---

[8] The Court need not and does not address the issue of whether Plaintiff preserved her objection to Defendant's factual argument as to whether Plaintiff was present in the hospital. (*See* Pl.'s Mem. at 21-24.)